UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAFFERI GROUP, LLC,** a New Jersey limited liability company,<br><br>        **Plaintiff,**<br><br>v.<br><br>**JUAN LAMOS, ALEX POU, ANDREW CHEN, INTERCON VENTURES, LLC,** a Florida limited liability company, **HARVEST PACK, INC.,** a California Corporation, and **AMWEAR USA INC,** a California Corporation,<br><br>        **Defendants.** | Civ. No. 21-16941(KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

  This action arises out of the sale of nitrile examination gloves to plaintiff Rafferi Group, LLC ("Rafferi) by defendants Intercon Ventures, LLC and Harvest Pack, Inc. (the "Intercon-Harvest Defendants"). Rafferi alleges that it agreed to purchase from the Intercon-Harvest Defendants thousands of 100-count glove boxes in order to fulfill an order Rafferi had received from the Texas Division of Emergency Management ("TDEM"). Alas, the boxes that the Intercon-Harvest Defendants sent to Rafferi, which Rafferi then shipped to TDEM, contained only 53 to 74 gloves per box.

  In addition to suing the Intercon-Harvest Defendants, Rafferi sued the alleged manufacturer of the gloves, Amwear USA, Inc. ("Amwear"). Amwear subsequently moved to dismiss the complaint and to quash service (DE 27),[1]

---

[1]  Certain key items from the record will be abbreviated as follows:
  DE = Docket entry number in this case
  Compl. = Complaint (DE 1)

1

and Rafferi filed a cross-motion to amend its complaint (DE 32). Both Amwear's motion to dismiss and quash service and Rafferi's cross-motion to amend are now before the Court. For the reasons stated herein, Amwear's motion to quash is **DENIED** and its motion to dismiss is **ADMINISTRATIVELY TERMINATED** without prejudice on jurisdictional grounds. I will defer ruling on Rafferi's cross-motion to amend until it is established that jurisdiction is proper.

### I.   Background

The facts alleged in the complaint are as follows. Rafferi is a New Jersey limited liability company. (Compl. ¶1.) Intercon Ventures, LLC ("Intercon") is a Florida limited liability company, while Harvest Pack, Inc. ("Harvest") and Amwear are both California corporations. (*Id.* ¶¶3, 5, 8.)

In February 2021, the Intercon-Harvest Defendants agreed to sell Rafferi 10,310 boxes of 100 nitrile examination gloves for a purchase price of $168,428. (*Id.* ¶12.) After Rafferi paid the agreed-upon price, the Intercon-Harvest Defendants informed Rafferi that the gloves would be delayed and that they would only be able to supply 7,840 boxes of 100 gloves each. (*Id.* ¶13.) Rafferi agreed to accept the reduced order and the Intercon-Harvest Defendants returned Rafferi's initial payment. (*Id.* ¶14.)

On March 4, 2021, the Intercon-Harvest Defendants delivered 7,840 boxes of gloves to Rafferi's warehouse in New Jersey. (*Id.* ¶¶15, 20.) Rafferi paid the agreed-upon purchase price of $127,592 several days later. (*Id.* ¶¶17.) Rafferi then shipped the boxes of gloves to TDEM in accordance with a pre-

---

Mot. = Brief in support of Amwear's motion to quash service and dismiss the Complaint (DE 27-1)

Opp. = Rafferi's brief in opposition to Amwear's motion to dismiss and in support of Rafferi's cross-motion to amend the complaint (DE 35)

Am. Compl. = Rafferi's proposed amended complaint (DE 39-1)

Elo Decl. = Declaration of Elliot Elo in support of Rafferi's cross-motion (DE 33)

Weiner Decl. = Declaration of Kyle Weiner in support of Amwear's opposition to Rafferi's cross-motion (DE 38-2)

existing order that TDEM had placed. (*Id.* ¶18.) Upon receiving the shipment, TDEM notified Rafferi that it was returning the gloves because the individual boxes did not contain 100 gloves each, but instead contained between 53 and 74 gloves per box. (*Id.* ¶19.) The gloves were shipped back to Rafferi's New Jersey warehouse at Rafferi's expense. (*Id.* ¶20.)

Rafferi requested that the Intercon-Harvest Defendants take back the gloves and return Rafferi's payment in light of the deficiencies in the order. (*Id.* ¶21.) In response, the Intercon-Harvest Defendants advised Rafferi that if it shipped the gloves to Amwear, the alleged manufacturer, then Amwear would send Rafferi a new shipment with the correct amount of gloves in each box. (*Id.*) Rafferi did as advised, but Amwear refused to accept the shipment. (*Id.* ¶22.) Rafferi was forced to again ship the gloves back to its warehouse in New Jersey. (*Id.*)

In September 2021, Rafferi commenced this action against the Intercon-Harvest Defendants, Amwear, and the individual owners of the three defendant entities. The complaint raises claims against all defendants for consumer fraud under N.J. Stat. Ann. § 56:8-2, common law fraud, breach of warranty, breach of the implied warranty of merchantability and fitness, and unjust enrichment. (*Id.* ¶¶26-56.) The complaint also raises a breach of contract claim against the Intercon-Harvest Defendants only. (*Id.*)

In May 2022, Amwear filed a motion to quash service and to dismiss the complaint. (DE 27.) In June 2022, Rafferi filed a cross-motion to amend its complaint to cure the deficiencies identified by Amwear in the motion to dismiss. (DE 32.)

## II. Discussion

### A. Motion to quash

Amwear argues that it was not served a summons and complaint in compliance with Fed. R. Civ. P. 4(h). That rule permits service "in the manner prescribed by Rule 4(e)(1)," which itself requires service by following the rules for service of process in the state where service is made or in the state where

the action is brought. In the present case, service on Amwear was made in California for an action brought in New Jersey.

According to Amwear, the summons, complaint, and civil cover sheet for the case were delivered on October 21, 2021, during normal business hours to the office of Amwear's agent for service of process and received by a person apparently in charge, but no copies of the papers were subsequently mailed to the agent. (Mot. 10.) Under New Jersey and California law, a followup mailing is required when personal delivery is not effected. Cal. Code Civ. Pro. § 415.20(a); N.J. Ct. R. 4:4-4(b), (c).

In opposition to Amwear's motion to quash, Rafferi filed a declaration by its attorney, Gerry Grunsfeld. (DE 34.) Attached to the declaration is a copy of an email exchange between Grunsfeld and counsel for Amwear, Phillip Guerts. On April 12, 2022, Grunsfeld emailed Guerts to notify him of a motion for entry of default against Amwear that Rafferi had filed, evidently because Amwear had not responded to the complaint within the prescribed time period for doing so. (DE 34-2.) When Guerts replied to Grunsfeld that he was not aware that a lawsuit had been initiated against Amwear and inquired about when service had occurred, Grunsfeld offered to withdraw the motion in exchange for Guerts accepting service on behalf of Amwear and responding to the complaint within 30 days. (*Id.*) Guerts agreed to do so. (*Id.*) Amwear does not deny it.

The Grunsfeld declaration and the attached email exchange indicate that the validity of service is no longer an issue in the case. Having agreed to accept service, Amwear can no longer contest its validity. Accordingly, the motion to quash is denied.

### B. Motion to dismiss

Amwear moves to dismiss the complaint on grounds of lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and failure to state a claim under Fed. R. Civ. P.

12(b)(6).[2] Because jurisdiction must be established before reaching the merits of Rafferi's claims, and because it has not been established here, this discussion is limited to the jurisdictional issues.

### i. Subject matter jurisdiction

The complaint asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in controversy exceeds $75,000. (Compl. ¶11.)

"Complete diversity," within the context of § 1332, means that all plaintiffs in an action must be diverse from all defendants. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). For purposes of diversity jurisdiction, a corporation is deemed to be a citizen both of the state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A limited liability company, on the other hand, is an unincorporated entity that is deemed to be a citizen of all states in which its members are citizens. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018).

As Amwear points out, the complaint fails to plead sufficient facts for the Court to ascertain the citizenship of all parties. (Mot. 4-5.) In particular, the complaint fails to plead the citizenship of the individual defendants Alex Pou and Andrew Chen; it fails to plead the principal places of business of Harvest and Amwear; and it fails to plead the citizenship of the individual members of Rafferi, a limited liability company, or to specify whether Juan Lamos is the sole member of Intercon, also a limited liability company.

In its opposition brief, Rafferi has conceded that it omitted necessary information in its complaint regarding the citizenship of all parties. (Opp. 1.) Rafferi cross-moves to amend the complaint so that it may include such information. In the proposed amended complaint, Rafferi alleges that its members are VSE Partners, LLC, Factofile Group, LLC, and Chelco Group,

---

[2] The Court does not take counsel for Amwear's consent to service as a concession that the Court has either personal jurisdiction over Amwear or subject matter jurisdiction over the claims asserted in the complaint.

LLC. (Am. Compl. ¶2.) The members of VSE Partners, LLC are Eric Sigoura and Victor Sigoura, New Jersey and New York residents, respectively. (*Id.* ¶5.) The members of Factofile Group, LLC and Chelco Group, LLC are Samuel Hassine and Liliane Hassine, both of whom are New Jersey residents. Thus, Rafferi is both a citizen of New Jersey and New York.

With respect to Intercon, Rafferi asserts that it is unaware of any additional members aside from Juan Lamos, a Florida resident. (*Id.* ¶8.) Given that Intercon answered the complaint and did not move to dismiss on jurisdictional grounds, Rafferi reasons that if Intercon has any additional members, they are not citizens of New Jersey. (Rafferi does not address the fact that it is a citizen of New York as well.) Moreover, because the complaint did not clearly indicate Rafferi's citizenship in either New Jersey or New York, the fact that Intercon did not move to dismiss on jurisdictional grounds cannot be taken to mean that Intercon has no members who are New York or New Jersey residents.

Turning to Harvest, which the complaint specifies is a California corporation, the amended complaint asserts that its principal place of business is in California. (*Id.* ¶9.) Hence, Harvest is a citizen of California only. Alex Pou, the alleged owner of Harvest, is a California resident and thus a California citizen as well. (*Id.* ¶10.)

Finally, Amwear is also a California resident, as it is incorporated and has its principal place of business in that state. (*Id.* 12¶). The amended complaint removes Andrew Chen as a defendant and therefore Chen's citizenship is no longer at issue.

In short, plaintiff Rafferi has alleged that diversity exists, but the necessary facts, some of which may be in the defendants' sole control, are lacking. I will therefore administratively terminate the motion to dismiss for lack of subject matter jurisdiction without prejudice to renewal after limited jurisdictional discovery. *See* Section II.b.iii, *infra.*

### ii.   Personal jurisdiction

Amwear also argues that, as a California corporation with a principal place of business in California, it is not subject to personal jurisdiction in New Jersey.

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998). First, the court must apply the long-arm statute of the state in which it sits to determine whether exercising personal jurisdiction over the defendant is permitted. *Id.* Second, the court must evaluate whether exercising personal jurisdiction under the given circumstances would be consistent with the requirements of the Due Process Clause of the United States Constitution. *Id.*

For a federal court sitting in New Jersey, "this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.* "Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has 'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 528 (D.N.J. 2013) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987)).

There are two kinds of personal jurisdiction: general and specific. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). Specific jurisdiction requires a connection between the defendant's contacts with the forum and the plaintiff's cause of action, whereas a defendant subject to general jurisdiction in a forum may be sued there regardless of whether the suit is related to the defendant's contacts. *Id.* A defendant must therefore have much more extensive contacts with a forum in order for general jurisdiction to apply.

"It is incredibly difficult to establish general jurisdiction over a

corporation in a forum other than the place of incorporation or principal place of business." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) (citation omitted). Perhaps recognizing this, Rafferi argues only that the Court has specific jurisdiction over Amwear, and I focus on that issue. The specific jurisdiction analysis requires consideration of whether (1) Amwear "purposefully directed its activities" at New Jersey, (2) the litigation "arises out of or relates to" at least one of those activities, and (3) the exercise of jurisdiction otherwise "comports with fair play and substantial justice." *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

    Where a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of demonstrating that it exists. *Metcalfe*, 566 F.3d at 330. Because the existence of personal jurisdiction is "inherently a matter which requires resolution of factual issues outside the pleadings . . . the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984). Furthermore, although "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor," *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004), the court must "examine any evidence presented with regard to disputed factual allegations." *Radwan*, 957 F. Supp. at 527.

    Rafferi offers the following facts to support the exercise of specific jurisdiction over Amwear. Amwear also does business under the name TactSquad. (Opp. 2.) Screenshots from TactSquad's website indicate that it sells pants to the New Jersey Department of Corrections or to New Jersey residents wishing to buy pants of the type worn by employees of the New Jersey Department of Corrections. (*Id.*; Elo Decl. Ex. B.) In addition, TactSquad sells its products directly to at least four businesses in New Jersey. (Opp. 3.; Elo Decl. Ex. C.) TactSquad also exhibited its products at a two-day "Police Security Expo" in New Jersey in 2018. (Opp. 3.; Elo Decl. Ex. D.)

8

Although these facts demonstrate that TactSquad has purposefully directed some of its activities at New Jersey, it is not clear that TactSquad and the entity that manufactured the gloves in this case are one and the same. Indeed, in opposition to Rafferi's cross-motion to amend the complaint, Amwear filed a declaration stating that Amwear USA, Inc. was wrongfully sued in this matter and that the entity that manufactured the gloves is actually Amwear Safety Pro., Inc. (Weiner Decl.) According to Kyle Weiner, the company's CEO, Amwear Safety Pro, Inc. (hereinafter, "Amwear SP") was incorporated in 2020 "specifically for the purpose of manufacturing and distributing products in the 'personal protective equipment' ('PPE') industry. All PPE transactions are made by and through Amwear Safety Pro, separate from Amwear USA, Inc." (*Id.*)[3]

To be sure, Amwear USA, Inc., Amwear SP, and TactSquad appear to be affiliated in some manner (they all have the same business address, for one thing). But that does not mean that TactSquad's contacts with New Jersey may be attributed to Amwear SP for purposes of establishing jurisdiction. Even if they could be, specific jurisdiction is only proper if the litigation "arises out of or relates to" a defendant's contacts with the forum. This requirement ensures that out-of-state corporations "can conduct their affairs 'confident that transactions in one context will not come back to haunt them unexpectedly in another.'" *O'Connor*, 496 F.3d 312 (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277–78 (7th Cir. 1997)). Amwear SP's sale of medical gloves to the Intercon-Harvest Defendants does not "arise out of or relate" to TactSquad's sale of apparel for law enforcement and security officers in New Jersey—those are two entirely different lines of business.

Nonetheless, it is possible that Amwear SP is subject to specific jurisdiction in New Jersey by nature of its sale of the nitrile gloves that Rafferi ultimately received, so long as that sale was purposefully directed at the state

---

[3]    Because the declaration indicates that Amwear Safety Pro, Inc. is incorporated in California and has its offices in California, the subject matter jurisdiction analysis would be unaffected by this development.

9

of New Jersey. *See Miller Yacht*, 384 F.3d at 96 ("A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant.") Because Amwear SP did not sell the gloves directly to Rafferi in New Jersey, but rather sold them to the Intercon-Harvest Defendants, which are not New Jersey citizens, such "purposeful availment," as it is often called, is not apparent here. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 209 L. Ed. 2d 225, 141 (2021).

In its proposed amended complaint, Rafferi alleges that Amwear SP knew that at least some of the gloves that it sold to the Intercon-Harvest Defendants would be re-sold to Rafferi. (Am. Compl. ¶46.) If true, this knowledge alone would not suffice to support the exercise of jurisdiction. However, if it were accompanied by evidence demonstrating that Amwear SP deliberately targeted New Jersey, then the exercise of jurisdiction over Amwear SP could be proper. *See J. McIntyre Machinery, Ltd. V. Nicastro*, 564 U.S. 873, 883 (2011) ("[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment.")

As in the case of subject matter jurisdiction, some factual development is required. I will therefore administratively terminate the motion to dismiss for lack of personal jurisdiction without prejudice to renewal after limited jurisdictional discovery. *See* Section II.b.iii, *infra*.

### iii.   **Jurisdictional discovery**

Rafferi has requested that it be permitted to conduct jurisdictional discovery in the event that the Court does not find the evidence submitted sufficient to establish jurisdiction. That request is granted. The Third Circuit directs district courts to permit jurisdictional discovery unless the plaintiff's jurisdictional claims appear "clearly frivolous." *Kuhar v. Petzl Co.*, No. CV 16-395 (JBS/JS), 2017 WL 2495404, at *1 (D.N.J. June 9, 2017) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). Rafferi's jurisdictional claims are not frivolous. Accordingly, within seven days, counsel for the parties shall either agree on a discovery schedule or arrange a

conference with the Magistrate Judge assigned to the case to set up such a schedule. In the meantime, further proceedings are stayed except as specified herein.

### III. Conclusion

The motion to quash is **DENIED** and the motion to dismiss is **ADMINISTRATIVELY TERMINATED** without prejudice to renewal after limited jurisdictional discovery under the supervision of the assigned Magistrate Judge. An appropriate order will issue.

Dated: December 27, 2022

/s/ Kevin McNulty

_____
**KEVIN MCNULTY**
**United States District Judge**